**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Jay Corniea,<br><br>            Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>           Defendant. | No. CV-14-01199-PHX-DGC<br><br>**ORDER** |

Plaintiff Thomas Corniea seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     Background.**

Plaintiff was born on October 25, 1954.  He has previously worked as a maintenance worker, bartender, and telemarketer.  Since the alleged onset of Plaintiff's disability in 2009, Plaintiff has suffered a variety of impairments.  He claims to suffer from a severe depression as well as an anxiety or panic disorder.  These psychological problems, he claims, prevent him from working and force him to spend time alone.  In May of 2010, Plaintiff was admitted to the hospital on account of depression, anxiety, and suicidal thoughts.  Plaintiff also suffers pain in his back, knees, and shoulders.  He

has undergone two surgeries for his right shoulder and a surgery for his right knee. Plaintiff also claims to suffer from chronic obstructive pulmonary disease, fatigue, and insomnia.

On July 15, 2009, Plaintiff applied for disability insurance benefits and supplemental security income. Plaintiff claimed that his disability began on October 5, 2006, but later amended this date to June 23, 2009. A.R. 27, 949. After an initial hearing, a decision denying benefits, and a remand from the Appeals Council, Plaintiff appeared with his attorney at a second hearing before the ALJ on July 23, 2013. A.R. 962. On August 29, 2013, the ALJ decided that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 27. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.

## II.     Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III.    The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears

the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010, and that he has not engaged in substantial gainful activity since October 5, 2006. At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder; generalized anxiety and panic disorder; pain from arthroscopic surgeries to his right shoulder and right knee; and reactive airway disease or chronic obstructive pulmonary disease ("COPD"). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> [L]ight work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that he is limited to occasional overhead reaching with the upper right extremity and should avoid concentrated exposure to hazardous moving machinery and unprotected heights. He should also avoid concentrated exposure to pulmonary irritants, including dust, fumes, odors, and gases. Finally, he is limited to semi-skilled work.

A.R. 32. The ALJ further found that Plaintiff is able to perform his earlier work as a telemarketer. For that reason, the ALJ concluded that Plaintiff is not disabled and did not proceed to step five of the analysis.

**IV.   Analysis.**

Plaintiff argues that the ALJ erred by improperly weighing the medical opinions of three doctors, by discrediting Plaintiff's testimony about his pain and symptoms, and by discrediting the statement of his girlfriend.

### A.   Weighing of Medical Source Evidence.

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: Dr. Sharon Steingard, Dr. Ivan Filner, and Dr. Ali Mojaverian.

#### 1.   Legal Standard.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician can be rejected for "specific

and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Dr. Sharon Steingard, D.O.

On May 17, 2010, Dr. Sharon Steingard, an examining but not treating psychiatrist, interviewed Plaintiff. A.R. 343. She diagnosed Plaintiff as having major depression with psychosis, panic disorder, and generalized anxiety disorder. A.R. 346. She described Plaintiff as being "likely to give up on tasks that he finds stressful. Pace is very slow for everything. Interaction is significantly impaired. He is very nervous and anxious, to the point of experiencing some auditory hallucinations. . . . His ability to adapt to the competitive workplace at this time is poor. . . . He would need a lot more supervision and attention than the average employee." A.R. 347. Dr. Steingard concluded that Plaintiff's impairments and symptoms limited his ability to work. *Id.*

The ALJ did not accept Dr. Steingard's opinion because: (1) Dr. Steingard did not review Plaintiff's treatment records; (2) her specific findings are not consistent with her conclusion; (3) her opinion is not consistent with the evidence in the record; and (4) her opinion is contradicted by Dr. Julio Angulo. Because Dr. Steingard's opinion was contradicted by another physician, the ALJ needed only specific and legitimate reasons for rejecting her opinion. *Lester*, 81 F.3d at 830-31.

The ALJ did not err in rejecting Dr. Steingard's opinion. The opinion was not consistent with the evidence in the record and was contradicted by another physician. Dr. Julio Angulo's psychological assessment of Plaintiff is strikingly different from Dr. Steingard's. He examined Plaintiff on September 15, 2009, and concluded:

> [W]hile [Plaintiff] does appear to experience anxiety and depression, his cognitive mental ability at least [is] not impaired in any significant way. . . . In all probability, if placed in a work situation, he might encounter issues of persistence/adaptability secondary to anxiety occasionally but not all the time. Overall, however, I do not see dysfunctions that might totally impede ability to participate in the work force.

A.R. 267. Dr. Angulo rated Plaintiff's understanding, concentration, social interaction, and adaptation as mostly good and only occasionally fair. A.R. 268.

The ALJ pointed to several parts of the record that support Dr. Angulo's opinion and undermine Dr. Steingard's. For example, recent reports state that Plaintiff has experienced "some improvement in mood and anxiety symptoms" and that his panic attacks are "mild." A.R. 840, 909. Plaintiff's global assessment of functioning ("GAF") score was assessed as 70, which indicates only mild or transitory limitations in social and occupational functioning. A.R. 423, 825; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (considering a GAF score as relevant evidence). Plaintiff himself testified that he suffered panic attacks only once a week and usually at night, which suggests that his anxiety is not as severe as Dr. Steingard found. A.R. 952, 966; *see also* A.R. 911 (noting that Plaintiff's panic attacks occur "less often tha[n] in the past"). Finally, Dr. Brady Dalton, a non-examining psychiatrist, also concluded that Plaintiff's understanding, concentration, social interaction, and adaptation were not significantly limited by his psychological problems. A.R. 313; *see also Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").[1]

---

[1] Plaintiff argues that the ALJ's finding that Plaintiff is capable of "semi-skilled work" is not consistent with the opinions of Dr. Angulo and Dr. Dalton. The Court disagrees. Dr. Angulo found that Plaintiff's mental abilities were mostly good and only

1    The medical opinions finding that Plaintiff's psychological problems are not debilitating, the reports of Plaintiff's psychological improvement, the infrequency of Plaintiff's panic attacks, and Plaintiff's GAF score were specific and legitimate reasons for rejecting Dr. Steingard's opinion.

### 3. Dr. Ivan M. Filner, D.O.

Beginning in 2009, Dr. Filner examined and treated Plaintiff on several occasions. A.R. 259-61, 318-23, 433-48, 658-99, 878-79. Dr. Filner filled out a brief report after each examination. *Id.* His reports usually stated that Plaintiff suffered from various impairments, including insomnia, depression, anxiety, osteoarthritis, and breathing difficulties. *See, e.g.*, A.R. 260, 435-48, 878-79. For the physical exam of Plaintiff, Dr. Filner almost always noted positive results. *See* A.R. 318-19, 435-48. For example, on December 2, 2011, he found that "[p]atient appears well nourished, well developed and hydrated," that his respiratory and cardiovascular systems are normal, and that Plaintiff shows "[n]o unusual anxiety or evidence of depression." A.R. 436.

Dr. Filner's reports do not note or suggest that Plaintiff was in pain or disabled. Nevertheless, in two separate medical assessments of Plaintiff's ability to work, Dr. Filner found that Plaintiff could not "perform work 8 hours a day, 5 days a week on a regular and consistent basis" because of his depression, anxiety, and osteoarthritis. A.R. 433, 878. In the first assessment, completed on December 2, 2011 (the same day on which he found Plaintiff's physical exam to be normal), Dr. Filner found that Plaintiff could not perform most activities except for occasional or frequent use of his feet and left hand. A.R. 433. He also wrote that, in an eight-hour workday, Plaintiff could sit for no more than two hours and stand or walk for less than two hours. *Id.* In the second assessment, completed on May 9, 2013, Dr. Filner made similar findings, also noting that

---

occasionally fair. A.R. 268. Dr. Dalton found that Plaintiff was able to understand and follow "simple and detailed instructions" and had "a fair to good ability [to] interact with" others. A.R. 313. These opinions are not inconsistent with the ALJ's finding that Plaintiff is capable of semi-skilled work, which is defined as "work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b).

Plaintiff would likely be absent from work for six or more days each month. A.R. 878-79.

The ALJ rejected Dr. Filner's opinion for the following reasons: (1) Dr. Filner's opinion regarding Plaintiff's exertional abilities is inconsistent with Plaintiff's testimony; (2) Dr. Filner's records do not mention a need for Plaintiff to frequently alternate his positions; (3) Dr. Filner's opinion is inconsistent with the evidence as a whole; and (4) Dr. Filner's opinion is inconsistent with physical-examination reports because the reports "were entirely normal and his notes rarely, if ever, contained actual descriptions of, or observations made by him about [Plaintiff's] conditions." A.R. 37. The ALJ did not point to a medical opinion that contradicts Dr. Filner's, and therefore the Court will assume that the ALJ needed clear and convincing reasons for rejecting his opinion.[2]

The Court finds that the ALJ gave two clear and convincing reasons. First, Dr. Filner's opinion is not consistent with the evidence as a whole. While the record contains ample evidence of Plaintiff's shoulder and knee injuries (A.R. 282, 689), the record contains sparse evidence that these injuries limited Plaintiff's work abilities. As noted by the ALJ, numerous records state that Plaintiff suffers minimal pain and his injuries do not cause significant limitations. A.R. 721 ("Pain control is described as adequate. No problems or complications have been reported."), 728, 730, 741, 746, 820 ("[Plaintiff] is doing well currently, without any complaints of knee pain, however he still has lower leg pain on occasion."), 886-87 (report of zero pain), 897 ("[Plaintiff] has no complaints of pain or discomfort in that knee. He is completely rehabilitated the right knee, and return to full activity."). Reports following Plaintiff's surgeries also show normal healing and no complications. A.R. 722, 730 ("No problems or complications [from the surgery]

---

[2] The Commissioner argues that Dr. Julio Angulo's opinion contradicts Dr. Filner's. Dr. Angulo, however, addressed Plaintiff's psychological impairments, while Dr. Filner addressed not only Plaintiff's psychological impairments but also his physical problems. Thus, Dr. Filner's opinion is contradicted only to the extent its findings rely on Plaintiff's psychological problems. The Court is unable to determine whether Dr. Filner's assessments of Plaintiff's work ability were based on Plaintiff's psychological or physical impairments. For that reason, and for the sake of simplicity, the Court will assess whether the ALJ gave clear and convincing reasons – as opposed to "specific and legitimate reasons" – for rejecting Dr. Filner's opinion. *Lester*, 81 F.3d at 830.

- 8 -

have been reported."), 888 ("[P]atient is doing well with progress following his [surgery]. The patient has no problems or issues today with examination or with activities of daily living."). These records are evidence that Plaintiff's physical impairments are not severely limiting, and provide a convincing reason for rejecting Dr. Filner's opinion.

Second, Dr. Filner's regular reports on Plaintiff do not indicate that Plaintiff is severely limited and do not support Dr. Filner's ultimate opinion. On an almost monthly basis since 2009, Dr. Filner has filled out a brief report on Plaintiff's condition. Dr. Filner has consistently noted that Plaintiff suffers various ailments, including depression, anxiety, osteoarthritis, and COPD. But Dr. Filner has rarely reported any problems with Plaintiff from his review of Plaintiff systems (e.g., constitutional, respiratory, cardiovascular) and his physical examination of Plaintiff. As already noted, a typical report states that "[p]atient appears well nourished, well developed and hydrated," that his respiratory and cardiovascular systems are normal, and that Plaintiff shows "[n]o unusual anxiety or evidence of depression." A.R. 436. The leap from these reports to Dr. Filner's final conclusion that Plaintiff cannot sit or stand for more than two hours, and that Plaintiff will require frequent absences, is unexplained. A.R. 433, 878-79. Indeed, Dr. Filner does not identify which ailment severely limits Plaintiff, and his assessment of Plaintiff's work ability is simply a check-box form. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *see also* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").[3]

The Court recognizes that the uncontradicted opinion of a treating physician is entitled to great deference. *Lester*, 81 F.3d at 830. This is particularly so when the physician has treated the claimant over an extended period of time. *See* 20 C.F.R.

---

[3] As noted, Dr. Filner did not explain whether Plaintiff's psychological or physical impairments were the primary cause of his disability. To the extent that Dr. Filner relied on Plaintiff's psychological problems, the ALJ properly rejected his opinion in favor of Dr. Angulo, for the reasons stated above.

- 9 -

§ 404.1527(c)(2). But when the treating physician regularly reports that a claimant is physically healthy, the physician's final opinion is inconsistent with other medical records, and the physician does not adequately explain why the claimant is severely impaired, the ALJ may properly reject his opinion.

### 4. Dr. Ali Mojaverian, M.D.

Dr. Mojaverian treated Plaintiff from late 2012 to early 2013. A.R. 847-77. He diagnosed Plaintiff as suffering from sleep disturbance, obstructive sleep apnea, dyspnea, tobacco abuse, and COPD. A.R. 849, 857, 867. In his reports, Dr. Mojaverian consistently found that Plaintiff's constitutional, gastrointestinal, and cardiovascular systems were normal, although he noted that Plaintiff suffered from shortness of breath. A.R. 847, 856, 866, 872, 875. The results of Plaintiff's physical exams were normal. A.R. 848, 857, 867, 873, 876. On June 24, 2013, Dr. Mojaverian completed an assessment of Plaintiff's ability to work. A.R. 932-33. He found that Plaintiff was unable to work eight hours a day, five days a week, on a consistent basis. He also found that Plaintiff could sit between two and three hours on a workday, that he could stand or walk for less than two hours, and that he would need to frequently alternate his position. *Id.* Significantly, Dr. Mojaverian did not identify the impairment that affected Plaintiff's ability to work, although he noted that Plaintiff's fatigue might cause additional limitations. *Id.*

The ALJ rejected Dr. Mojaverian's opinion for largely the same reasons that he rejected Dr. Filner's. The ALJ also emphasized that Dr. Mojaverian had provided little treatment for Plaintiff. A.R. 37. The ALJ did not point to a medical opinion that contradicts Dr. Mojaverian's, and therefore the ALJ needed clear and convincing reasons for rejecting his opinion.

The ALJ properly rejected Dr. Mojaverian's opinion because the opinion is inconsistent with the evidence, not supported by the doctor's own findings, and is completely unexplained. As already discussed, the evidence in the record depicts a person who is recovering from his surgeries, who is not debilitated by pain, and whose

psychological symptoms are not as great as he claims. Additionally, Dr. Mojaverian's reports consistently stated that the results from Plaintiff's physical exams were normal and that some of Plaintiff's impairments have improved over time. A.R. 856 ("In the interval month(s) . . . the patient's dyspnea has improved. Episodes occur intermittently. The severity is mild."), 866. The doctor did describe Plaintiff's COPD as "mildly severe." A.R. 847. But he also noted that "the symptoms have been fluctuating," that Plaintiff's respiratory system was "clear to auscultation," and that his pulmonary system exhibited mild obstruction only. A.R. 847, 867.

More significantly, Dr. Mojaverian's assessment of Plaintiff's work ability was unexplained. The doctor did not identify the impairment that imposes severe work limitations on Plaintiff. A.R. 932. The Court is left unsure whether Plaintiff's sleep problems, COPD, or tobacco use is the cause of Plaintiff's work limitations. And although the doctor noted that Plaintiff's fatigue might cause additional limitations, he did not explain what these limitations are. Dr. Mojaverian's opinion amounts to an unexplained check-box form, and "[o]pinions on a check-box form or form reports which do not contain significant explanation of the basis for the conclusions may [be] accorded little or no weight." *Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1192 (E.D. Wash. 2009) (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996)). Finally, the ALJ was entitled to give less deference to Dr. Mojaverian's opinion due to the shortness of his relationship with Plaintiff. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).

**C.     The ALJ Did Not Err in Evaluating Plaintiff's Credibility.**

**1.     Legal Standard.**

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d

995, 1014 (9th Cir. 2014) (citations omitted).  "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  Second, if there is no evidence of malingering, the ALJ may reject the claimant's testimony about the testimony of her symptoms only by offering specific, clear, and convincing reasons for doing so.  *Id.* at 1014-15; *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).  To support a lack of credibility finding, the ALJ must "'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'"  *Vasquez*, 572 F.3d at 592 (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

### 2.     Plaintiff's Testimony.

Plaintiff testified at two hearings.  A.R. 946, 960.  At both hearings, Plaintiff stated that he left his last job because of his anxiety and panic attacks.  A.R. 951, 966.  He explained that his panic attacks occur about once a week and usually in the middle of the night (A.R. 952), and that his psychological problems force him to avoid people and crowded places (A.R. 952, 966).  He also stated that he has difficulty remembering and concentrating.  A.R. 972.  He has contemplated suicide.  A.R. 953-34.  Plaintiff discussed his knee and shoulder injuries.  A.R. 955-57, 967-69.  He testified that he cannot sit, stand, or walk for more than sixty minutes at a time.  *Id.*  As for his daily activities, Plaintiff stated that he does occasional chores, cooks simple meals, takes care of personal hygiene, goes to the grocery store, and spends time alone watching television.  A.R. 958, 969-71.  Finally, Plaintiff stated that he frequently naps and suffers from insomnia.  A.R. 971-72.

### 3.     Analysis.

The ALJ first found that Plaintiff had various impairments – including depression, anxiety, pain in his knees and shoulders, and COPD – that could reasonably be expected to produce the pain or other symptoms that Plaintiff alleged.  The ALJ then discredited

Plaintiff's testimony to the extent that it was inconsistent with the ALJ's finding that Plaintiff is capable of light work.

The ALJ did not err in discrediting Plaintiff's testimony. Plaintiff testified that his depression, anxiety, and panic attacks interfered with his ability to work. A.R. 951-52. But as discussed, two doctors found that Plaintiff's psychological problems do not prevent him from working (A.R. 267, 313), and their opinions are supported by the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding that an ALJ may rely on doctors' opinions in discrediting a claimant's testimony). Plaintiff also claimed that his shoulder and knee injuries prevented him from sitting, standing, or walking for more than sixty minutes. While this testimony is consistent with the opinions of Doctors Filner and Mojaverian, it is inconsistent with the extensive evidence that the ALJ found more probative. A.R. 721, 728, 730, 741, 746, 820, 886-87, 897. The ALJ was entitled to rely on reports stating that Plaintiff "is completely rehabilitated [on] the right knee, and [may] return to full activity" (A.R. 897), and Plaintiff "has no problems or issues today with examination or with activities of daily living" (A.R. 888). *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

The ALJ also found that Plaintiff's earlier statements to medical providers were inconsistent with his testimony. For instance, Plaintiff claimed that he has been disabled since 2009. But he previously reported to a physical therapist that he had been "independent with all mobility and [activities of daily living]" until 2012 (A.R. 905), and reported elsewhere that he was living alone and was functionally independent in 2012. A.R. 919. Furthermore, although Plaintiff testified that his physical impairments severely limited his sitting, standing, and walking, he has reported to physicians very low levels of pain and an ability to function on a daily basis. A.R. 721, 886-87, 897. A claimant's prior inconsistent statements regarding his pain and symptoms are an important factor in assessing the claimant's credibility. *Smolen*, 80 F.3d at 1284.

1    The Court finds the ALJ's reasons for discrediting Plaintiff's testimony to be specific, clear, and convincing. Doctor's opinions and treatment notes, and Plaintiff's inconsistent statements, cast doubt on Plaintiff's testimony, and the ALJ did not err in rejecting it.[4]

### D.  The ALJ Did Not Err in Assessing Ms. Qualls' Statement.

Plaintiff argues that the ALJ erred by rejecting the statement of Jamie Qualls, Plaintiff's girlfriend. If an ALJ discounts the statement of a lay witness, he must give reasons that are germane to each witness. *Dodrill*, 12 F.3d at 919. Ms. Qualls filled out a "function report" and stated the following: Plaintiff mostly lies in bed and watches television; he suffers from depression, anxiety, and panic attacks; he lacks energy and does not function as he used to; and his injuries affect his memory, concentration, understanding, and sociability. A.R. 174-81.

The ALJ discredited Ms. Quall's opinion for three reasons: (1) it is inconsistent with the evidence in the record; (2) it is most likely biased since she is Plaintiff's girlfriend; and (3) even if true, it does not show that Plaintiff is disabled. The Court finds the third reason to be dispositive. Ms. Quall's opinion does not show that Plaintiff is disabled, but merely establishes that Plaintiff has psychological difficulties that affect his daily functioning. The ALJ also found that Plaintiff suffers psychological problems that affect his daily functioning, but that they were not serious enough to prevent him from working. Notably, Ms. Quall did not discuss Plaintiff's shoulder or knee impairments. The ALJ properly addressed Ms. Quall's opinion.

---

[4] In discrediting Plaintiff's testimony, the ALJ also cited Plaintiff's occasional non-compliance and his failure to seek treatment. *See, e.g.*, A.R. 785 (Plaintiff not following instruction to wear a sling). Because the ALJ's other reasons were sufficient for discrediting Plaintiff, the Court will not address these reasons even if they were erroneous. *See Batson*, 359 F.3d at 1197 (finding that, even if the record does not support one of the ALJ's reasons for discrediting a claimant, the error is harmless if the other reasons are sufficient).

- 14 -

### E. Conclusion.

In various parts of his brief, Plaintiff argues more broadly that substantial evidence does not support the ALJ's decision. He argues that the "longitudinal" or entire record shows that Plaintiff is in fact disabled. The Court agrees that Plaintiff suffers from various impairments. The issue, however, is not whether Plaintiff suffers from these impairments. The ALJ found that he did. Rather, the issue is the extent to which these impairments limit Plaintiff's ability to work. Three doctors found that Plaintiff's impairments prevented him from working, and Plaintiff also testified that he was disabled. But, as discussed, the ALJ not only gave sufficient reasons for rejecting the opinions and testimony, but also discussed how the record as a whole does not support them. Examining doctors and nurses frequently reported that Plaintiff was not suffering pain from his knees or shoulders. *See* A.R. 721, 728, 730, 741, 746, 820, 886-87, 888 ("The patient has no problems or issues today with examination or with activities of daily living."), 897. Two doctors concluded that Plaintiff's depression and anxiety did not prevent him from working. A.R. 267 ("Overall, however, I do not see dysfunctions that might totally impede ability to participate in the work force."), 313. Plaintiff has previously reported that his psychological and physical impairments do not hamper his daily functioning. A.R. 721, 886-87, 897. And finally, the doctors who opined that Plaintiff is disabled consistently gave positive reports after they physically examined Plaintiff. A.R. 436, 848, 857.

Substantial evidence supports the ALJ's decision. Even if Plaintiff has shown that the Court could reasonably interpret the record as showing that Plaintiff is disabled, the ALJ's interpretation remains reasonable. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 15th day of May, 2015.

David G. Campbell
United States District Judge